U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 SEP 25 A 10: 19

CLERK

DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| NORMA XIOMARA ZAVALA LEIVA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:26-cv-253 |
| | ) | |
| MARKWAYNE MULLIN et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO DISMISS**
**(Doc. 19)**

Plaintiff Norma Xiomara Zavala Leiva brings this action against several government officials ("the Government") alleging that she was unlawfully removed from the United States. She states that she had deferred action and work authorization as a result of a favorable bona fide determination ("BFD") on her pending U nonimmigrant status ("U visa") application and that the Government therefore had no authority to act on her outstanding removal order. Immigration and Customs Enforcement ("ICE") nevertheless removed her to El Salvador on May 16, 2026. She now seeks a preliminary injunction requiring the Government to "to treat her deferred action as valid and in force, and directing them to facilitate her return to the United States in the status she held on the day she was removed." (Doc. 10-1 at 2.)

The court heard oral argument on the motion on August 19, 2026. The Government seeks dismissal under Fed. R. Civ. P. 12(b)(3) or transfer under 28 U.S.C. § 1406(a), on the grounds that venue in the District of Vermont is improper. (Docs. 17, 19, 20.) Plaintiff opposes dismissal (Doc. 24) and the Government has filed a reply (Doc. 26). The court rejects the Government's venue arguments and DENIES the Government's Motion to Dismiss based on those arguments. The court RESERVES decision on Ms. Zavala Leiva's request for a

preliminary injunction and will schedule a further hearing to address that issue based on events that have transpired since the August 2026 motion hearing.

**Statutory and Regulatory Framework**

The court begins with a brief explanation of the U visa program and adjudicative process. The court provides additional details as necessary throughout the order.

The U visa program, codified at 8 U.S.C. § 1101(a)(15)(U), was created as part of the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386, § 1513(a)(2)(A), 114 Stat. 1464, 1533 (2000). The program allows noncitizens who are victims of crimes in the United States to apply for lawful nonimmigrant status and receive employment authorization. To be eligible, the noncitizen must report the crime and, if asked, assist law enforcement with investigation and prosecution. 8 U.S.C. § 1184(p)(6). Certain family members of a principal U visa petitioner may also be eligible to receive a derivative U visa. *See* 8 C.F.R. § 214.14(f).

USCIS is authorized to issue only 10,000 principal U visas per year, 8 U.S.C. § 1184(p)(2)(A), which has created a significant backlog of applications. To ensure that U visa applicants can receive work authorization and protection from deportation while awaiting their U visas, Congress has passed legislation allowing USCIS to provide interim benefits to applicants, including to those applicants who have submitted a bona fide application for a U visa. 8 U.S.C. § 1184(p)(1)–(6). USCIS acted on its power to issue bona fide determinations ("BFDs") in 2021, when it announced the new BFD process. *See, e.g.*, USCIS, *Policy Alert* (PA-2021-13 Jun. 14, 2021), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20210614-VictimsOfCrimes.pdf [https://perma.cc/S5UD-R99T]. USCIS considers an application to be bona fide "based on the petitioner's compliance with initial evidence requirements and successful completion of background checks." USCIS Policy Manual, Vol. 3,

Part C, ch. 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 [https://perma.cc/PW3H-H3A5].

If the application is bona fide, USCIS then considers whether it should grant deferred action and employment authorization as a matter of discretion. "Approval of deferred action status means that . . . no action will thereafter be taken to proceed against an apparently deportable [noncitizen], even on grounds normally regarded as aggravated." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) ("*AADC*") (internal quotation marks and citation omitted). The grants of employment authorization and deferred action are linked, with the grant of deferred action allowing for the issuance of work authorization. *See* 8 C.F.R. § 274a.12(c)(14) (authorizing employment authorization for a noncitizen "who has been granted deferred action"). The grant of deferred action and work authorization is valid for four years. USCIS Policy Manual, Vol. 3, Part C, ch. 5. Additionally, when USCIS issues work authorization based on a BFD, "the petitioner is also considered to have established a prima facie case for approval within the meaning of [8 U.S.C. § 1227(d)]." *Id.* Section 1227(d) in turn provides that a U visa applicant who has established a prima facie case for approval, the Secretary of Homeland Security "may grant the [noncitizen] an administrative stay of a final order of removal."

## **Factual Background**

The following facts are drawn from the parties' filings and the documents attached to those filings.

Ms. Zavala Leiva is a citizen and national of El Salvador. (Doc. 1-4 ¶ 1.) She is married to Oved Isaias Martinez Larin, with whom she shares three children. (*Id.* ¶ 2.) Her husband and children are also citizens and nationals of El Salvador. (*Id.*) In 2016, the family came to the

United States to seek asylum. (*Id.* ¶ 3.) An immigration judge denied Ms. Zavala Leiva's application for asylum and ordered her removed on July 19, 2018. (*Id.* ¶ 5.) Her motion to reopen and appeal to the Board of Immigration Appeals ("BIA") were also denied. (*Id.* ¶ 6.) The removal order became final on January 31, 2022. (*Id.*) Ms. Zavala Leiva requested a stay of removal, which ICE granted, and she was then placed under an Order of Supervision on March 9, 2022, which required her to appear for periodic check-ins with ICE. (*Id.* ¶ 8, Doc. 1 ¶ 50.)

Also in March 2022,[1] Ms. Zavala Leiva and her family were the victims of a violent robbery. (Doc. 1-4 ¶ 9.) The charges against the assailant included aggravated assault, felony unlawful use of a weapon, and endangering the welfare of a minor child, all under Missouri law. (Doc. 1 ¶ 51.) The family reported the crime to the police and cooperated with all requests from the police department. (Doc. 1-4 ¶ 9.) Based on their victimization and their assistance with the investigation, the family applied for U visas, with Mr. Martinez Larin as the principal applicant. (*Id.* ¶ 10.)

On February 7, 2025, USCIS's Vermont Service Center granted a favorable BFD and deferred action to Ms. Zavala Leiva. (Doc. 1-1.) She was approved for work authorization at the same time. (Doc. 1-2.) Both her deferred action and work authorization stated that they were valid from February 7, 2025, until February 6, 2029. (Docs. 1-1, 1-2.)

[1] While Ms. Zavala Leiva states in her declaration that the robbery took place in March 2022, the complaint states that the crime occurred on December 20, 2021. (Doc. 1 ¶ 51.) For the purposes of this motion, the date on which the crime occurred does not matter.

On May 4, 2026, Ms. Zavala Leiva reported for an ICE check-in at the ICE office in Kansas City.[2] (Doc. 1-4 ¶ 13.) Although Ms. Zavala Leiva's deferred action remained valid, ICE took her into custody without explanation except for a single piece of paper: a two-sentence memorandum stating that ICE had cancelled her Form I-220A Order of Release on Recognizance "for the reasons stated in Form I-213, dated October 21, 2016."[3] (Doc. 1 ¶ 55; Doc. 1-3; Doc. 1-4 ¶¶ 16–19.) Over the next several days, ICE transferred Ms. Zavala Leiva to detention facilities in Kansas and Louisiana before ultimately removing her to El Salvador on May 15, 2026. (Doc. 1-4 ¶¶ 18–20.) On August 18, 2026, citing Ms. Zavala Leiva's May 2026 deportation, USCIS's Nebraska Service Center issued a Revocation Notice revoking Ms. Zavala Leiva's work authorization and terminating the deferred action that the Vermont Service Cener had previously granted. (Doc. 24-1.) The Government represents that "as part of a workload realignment USCIS is currently undergoing, any further action that USCIS will take on [Ms. Zavala Leiva's] U-visa petition will occur in the Nebraska Service Center." (Doc. 17 at 2.)

Ms. Zavala Leiva's family remains in the United States. They are facing a number of hardships because of Ms. Zavala Leiva's absence. (*Id.* ¶ 22.) Of particular note, Ms. Zavala Leiva was the primary caregiver for her oldest daughter, Gabriela, who is deaf, has a speech delay, and has global developmental delay. (*Id.*) Without Ms. Zavala Leiva's care, Gabriela has been struggling both physically and emotionally. (*Id.* ¶ 23.) Ms. Zavala Leiva's husband and second oldest child are attempting to fill her shoes, but they cannot communicate as effectively

---

[2] The court infers that this refers to Kansas City, Missouri, not the city by the same name in the state of Kansas.

[3] The referenced October 2016 Form I-213 is not before the court. The Government has submitted a copy of a Form I-213 dated May 4, 2026, which indicates that officers notified Ms. Zavala Leiva that there was "an outstanding warrant for her arrest." (Doc. 17-1 at 2.) The Form I-213 referenced "current criminal charges" of May 4, 2026, under 8 U.S.C. § 1251. (*Id.*)

with Gabriela as Ms. Zavala Leiva could. (*Id.* ¶¶ 23–24.) Through this lawsuit, she seeks to be united with them.

**Legal Standards**

"A court applies the same standard of review in Rule 12(b)(3) dismissals as Rule 12(b)(2) dismissals for lack of personal jurisdiction." *Petrova v. U.S. Dep't of Homeland Sec.*, 807 F. Supp. 3d 313, 330 (D. Vt. 2025) (quoting *Fedele v. Harris*, 18 F. Supp. 3d 309, 316 (E.D.N.Y. 2014)). "The court 'must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.'" *Id.* (quoting *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004)). "[I]n deciding a motion to dismiss for improper venue, the 'court may examine facts outside the complaint to determine whether venue is proper.'" *Id.* (alteration in original; quoting *Concesionaria*, 307 F. Supp. 2d at 555). The plaintiff has the burden of proof to show that venue is proper. *Berkley Ins. Co. v. Bouchard*, No. 20-cv-00009, 2020 WL 7646542, at *5 (D. Vt. Dec. 23, 2020).

**Analysis**

Ms. Zavala Leiva raises claims under the Administrative Procedures Act ("APA"), the Due Process Clause of the Fifth Amendment, and the Mandamus Act, arguing that her removal was unlawful under each. The Government responds that: (1) all of the events giving rise to Ms. Zavala Leiva's claims occurred in Kansas City, and the case should therefore be dismissed under Fed. R. Civ. P. 12(b)(3) or transferred to Missouri under 28 U.S.C. § 1406(a); and (2) if the court reaches the merits, the requests for a TRO and for a preliminary injunction should be denied. (Doc. 17 at 2.)

The court begins with the issue of venue. Section 1391(e)(1)(B) of Title 28 of the U.S. Code provides as follows:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which . . . a substantial part of the events or omissions giving rise to the claim occurred . . . .

Ms. Zavala Leiva asserts that venue under this provision because the USCIS Vermont Service Center was the entity that gave her a favorable BFD and granted her deferred action on February 7, 2025. (Doc. 1 ¶ 15.) She further notes that "[t]hat grant [of deferred action] is the source of the right at issue in this case, and the office that issued it has never revoked it." (*Id.*) The Government disagrees, asserting that no party resides in the District of Vermont and that the relevant events in this case are Ms. Zavala Leiva's detention and removal, which occurred in Missouri, Kansas, and Louisiana. (*See* Doc. 17 at 6–9; Doc. 19 at 6–9.)

Analyzing the analogous provision for civil suits not involving the United States, its agencies, or its officers, the Second Circuit has held that the phrase "substantial part" "does not restrict venue to the district in which the 'most substantial' events or omissions giving rise to the claim occurred." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005). "Rather, . . . venue can be appropriate in more than one district . . . as long as a 'substantial part' of the underlying events took place in those districts." *Id.* (internal quotation marks and citation omitted).

> Thus . . . a two-part inquiry is appropriate. First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims. Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed . . . .

*Id.* at 432. The Second Circuit has instructed district courts that, in undertaking this analysis, they must "take seriously the adjective 'substantial'" and that, "for venue to be proper, *significant* events or omissions *material* to the plaintiff's claims must have occurred in the district in question." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005).

"'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not simply by adding up the number of contacts." *Daniel*, 428 F.3d at 432–33.

The nature of the claims in this case concerns Ms. Zavala Leiva's allegations that ICE detained and removed her even though she had a valid, unrevoked grant of deferred action in connection with the U visa BFD that USCIS's Vermont Service Center had issued. She argues she has been denied the enjoyment of her deferred action and employment authorization as a result. In her view, subsequent events such as her arrest in Missouri or the alleged cancelation of her BFD in Nebraska do not change the status of Vermont as the place where she was granted bona fide status.

The events that occurred in Missouri, Kansas, and Louisiana are clearly a "substantial part" of the acts giving rise to Ms. Zavala Leiva's claim. But the Vermont Service Center's grant of deferred action is also an important element of the case. Without that grant, ICE would have had authority to remove Ms. Zavala Leiva, and she would have no basis to sue. A central part of her claim is that USCIS had not revoked her deferred action at the time that ICE detained her.

The Government argues that Ms. Zavala Leiva "must do more than demonstrate that the grant and continued validity of her deferred action, issued by the Vermont Service Center, is a material element of her claims." (Doc. 26 at 5.) Noting that the complaint does not "challenge[] any action or omission by the USCIS Vermont Service Center," the Government asserts that review of Ms. Zavala Leiva's claims "as a whole" shows that all significant events material to those claims occurred outside of Vermont. (*Id.* at 5–6.) The court is unpersuaded. The

Government cites no authority for the proposition that a "substantial" event for purposes of the venue analysis must be an act or omission that the plaintiff is challenging. In fact, court decisions are contrary to that proposition. *See Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 43 (1st Cir. 2001) ("[A]n event need not be a point of dispute between the parties in order to constitute a substantial event giving rise to the claim."); *Fox v. Paterson*, No. 10-CV-6240, 2010 WL 11545717, at *5 (W.D.N.Y. May 13, 2010) (a court evaluating venue "should not focus only on those matters that are in dispute or that directly led to the filing of the action" but should instead "review the entire sequence of events underlying the claim" (quoting *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004))).

Events since Ms. Zavala Leiva filed her complaint indicate that USCIS's Nebraska Service Center has assumed sole responsibility for her case within that agency. Insofar as Ms. Zavala Leiva seeks to compel action from USCIS's Vermont Service Center,[4] that office is not likely the correct object of the request for relief. *Cf. Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 18 (D.D.C. 2008) (venue was proper in jurisdiction where USCIS would be compelled to act). For the same reason, insofar as official-capacity defendant Lynn A. Boudreau, as the Acting Director of the USCIS Vermont Service Center,[5] resides in this district as contemplated by 28 U.S.C. § 1391(e)(1)(A),[6] that also does not weigh in favor of venue here.

---

[4] It seems that she does not. She asserts that she "does not ask an officer in Essex Junction, VT to arrange her travel" and that the relief she is seeking is a court order requiring "the Department [of Homeland Security] to undo what its components did while its own grant of relief stood." (Doc. 24 at 9.)

[5] The complaint names Laura Zuchowski as a defendant in her official capacity as Director of USCIS's Vermont Service Center. The Government advises that Ms. Boudreau is currently the Acting Director of that facility. (Doc. 19 at 1 n.1.) Ms. Boudreau is automatically substituted as a defendant under Fed. R. Civ. P. 25(d).

[6] The Government asserts that, for venue purposes, all defendants employed by USCIS—including Ms. Boudreau —reside in the District of Maryland, the location of USCIS's

The recent actions of USCIS's Nebraska Service Center post-date the filing of the complaint in this case, and for that reason they carry little or no weight in the venue analysis. *See Petrova v. U.S. Dep't of Homeland Sec.*, 807 F. Supp. 3d 313, 347 (D. Vt. 2025) ("[V]enue is determined on the facts at the time a complaint is filed." (quoting *N-N v. Mayorkas*, 540 F. Supp. 3d 240, 253 (E.D.N.Y. 2021))). To the extent that some of the relevant evidence may now be in Nebraska as well as other states outside of Vermont, the Government's suggestion (Doc. 26 at 6) that it will be unduly inconvenienced in preparing its defense is not persuasive.[7] In any case, the court is satisfied that the prior actions of USCIS's Vermont Service Center granting a BFD constitute a "substantial" part of the underlying events in this case.

Ms. Zavala Leiva "need not demonstrate that [her] choice of venue is the best forum; [she] need only demonstrate a prima facie case that [her] choice is permissible under the statute." *Jenkins v. Miller*, 983 F. Supp. 2d 423, 464 (D. Vt. 2013) (citing *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992)). She has done that. Because the court finds no basis to dismiss the case under Rule 12(b)(3), the court also finds no basis to transfer the case under 28 U.S.C. § 1406(a).

---

headquarters. (Doc. 19 at 7.) If a defendant is an agency itself, then the court would agree that the defendant's "residence" is its headquarters. *See Schwarz v. I.R.S.*, 998 F. Supp. 201, 203 (N.D.N.Y. 1998) ("Venue is not proper merely because a federal agency maintains a regional office in a district."). But the complaint in this case names the Vermont Service Center's director in her official capacity. For venue purposes, the residence of a federal official named in her official capacity is the place where she performs her official duties. *Feng Chen ex rel. Jiang Jinghon v. Sessions*, 321 F. Supp. 3d 332, 336 (E.D.N.Y. 2018) (citing *Caremark Therapeutic Servs. v. Leavitt*, 405 F. Supp. 2d 454, 464 (S.D.N.Y. 2005)). For Ms. Boudreau in her official capacity, her "residence" for venue purposes is the District of Vermont. *Cf. Rowlett v. Fairfax*, 446 F. Supp. 186, 187 (W.D. Mo. 1978) (venue was proper in Missouri because the defendant, a United States marshal, resided there; no suggestion that venue should have been in the district where the U.S. Marshals Service was headquartered).

[7] Indeed, in other filings in this case, the Government has noted the significant resources available to ICE. (*See* Doc. 19 at 12.)

**Conclusion**

Defendants' Motion to Dismiss for improper venue (Doc. 19) is DENIED. The court RESERVES ruling on the request for a preliminary injunction (Doc. 10) pending a further hearing to address that issue in light of events that have transpired since the August 2026 motion hearing.

Dated at Burlington, in the District of Vermont, this 25th day of September, 2026.

Geoffrey W. Crawford, Judge
United States District Court