U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 OCT 15 P 12: 32

CLERK
BY [signature]
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| NORMA XIOMARA ZAVALA LEIVA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:26-cv-253 |
| | ) | |
| MARKWAYNE MULLIN et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**
**(Doc. 10)**

Plaintiff Norma Xiomara Zavala Leiva brings this action against several government officials ("the Government") alleging that she was unlawfully removed from the United States. She states that she had deferred action and work authorization due to a favorable bona fide determination ("BFD") on her pending U nonimmigrant status ("U visa") application and that the Government therefore had no authority to act on her outstanding removal order. Immigration and Customs Enforcement ("ICE") nevertheless removed her to El Salvador on May 16, 2026. (*See* Compl., Doc. 1.) She now seeks a temporary restraining order ("TRO") and a preliminary injunction requiring the Government "to treat her deferred action as valid and in force, and directing them to facilitate her return to the United States in the status she held on the day she was removed." (Doc. 10-1 at 2.)

The court heard oral argument on the motion on August 19, 2026, at which time the court set deadlines to respond to the preliminary-injunction request and to file a motion to dismiss. The Government subsequently sought dismissal for lack of venue, which the court denied on September 25, 2026. (Doc. 27.) In that decision, the court noted additional factual developments, including a Revocation Notice that the U.S. Citizenship and Immigration Services

("USCIS") Nebraska Service Center issued to Ms. Zavala Leiva revoking her work authorization and terminating the deferred action that the Vermont Service Center had previously granted. (Doc. 24-1.) The court ordered further argument on the preliminary-injunction motion "in light of events that have transpired since the August 2026 motion hearing." (Doc. 27 at 11.) The court heard additional argument on October 9, 2026.

**Statutory and Regulatory Framework**

The court begins with a brief explanation of the U visa program and adjudicative process. The court provides additional details as necessary throughout this order.

The U visa program, codified at 8 U.S.C. § 1101(a)(15)(U), was created as part of the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386, § 1513(a)(2)(A), 114 Stat. 1464, 1533 (2000). The program allows noncitizens who are victims of crimes in the United States to apply for lawful nonimmigrant status and receive employment authorization. To be eligible, the noncitizen must report the crime and, if asked, assist law enforcement with investigation and prosecution. 8 U.S.C. § 1184(p)(6). Certain family members of a principal U visa petitioner may also be eligible to receive a derivative U visa. *See* 8 C.F.R. § 214.14(f).

USCIS is authorized to issue only 10,000 principal U visas per year, 8 U.S.C. § 1184(p)(2)(A), which has created a significant backlog of applications. To ensure that U visa applicants can receive work authorization and protection from deportation while awaiting their U visas, Congress has passed legislation allowing USCIS to provide interim benefits to applicants, including to those applicants who have submitted a bona fide application for a U visa. 8 U.S.C. § 1184(p)(1)–(6). USCIS acted on its power to issue bona fide determinations ("BFDs") in 2021, when it announced the new BFD process. *See, e.g.*, USCIS, *Policy Alert* (PA-2021-13 Jun. 14, 2021), https://www.uscis.gov/sites/default/files/document/policy-manual-

updates/20210614-VictimsOfCrimes.pdf [https://perma.cc/S5UD-R99T]. USCIS considers an application to be bona fide "based on the petitioner's compliance with initial evidence requirements and successful completion of background checks." USCIS Policy Manual, Vol. 3, Part C, ch. 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 [https://perma.cc/PW3H-H3A5].

If the application is bona fide, USCIS then considers whether it should grant deferred action and employment authorization as a matter of discretion. "Approval of deferred action status means that . . . no action will thereafter be taken to proceed against an apparently deportable [noncitizen], even on grounds normally regarded as aggravated." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) ("*AADC*") (internal quotation marks and citation omitted). The grants of employment authorization and deferred action are linked, with the grant of deferred action allowing for the issuance of work authorization. *See* 8 C.F.R. § 274a.12(c)(14) (authorizing employment authorization for a noncitizen "who has been granted deferred action"). The grant of deferred action and work authorization is valid for four years. USCIS Policy Manual, Vol. 3, Part C, ch. 5. Additionally, when USCIS issues work authorization based on a BFD, "the petitioner is also considered to have established a prima facie case for approval within the meaning of [8 U.S.C. § 1227(d)]." *Id.* Section 1227(d) in turn provides that the Secretary of Homeland Security "may grant . . . an administrative stay of a final order of removal" to a U visa applicant who has established a prima facie case for approval.

**<u>Factual Background</u>**

The following facts are drawn from the parties' filings and the documents attached to those filings.

Ms. Zavala Leiva is a citizen and national of El Salvador. (Doc. 1-4 ¶ 1.) She is married to Oved Isaias Martinez Larin, with whom she shares three children. (*Id.* ¶ 2.) Her husband and children are also citizens and nationals of El Salvador. (*Id.*) In 2016, the family came to the United States to seek asylum. (*Id.* ¶ 3.) An immigration judge denied Ms. Zavala Leiva's application for asylum and ordered her removed on July 19, 2018. (*Id.* ¶ 5.) Her motion to reopen and appeal to the Board of Immigration Appeals ("BIA") were also denied. (*Id.* ¶ 6.) The removal order became final on January 31, 2022. (*Id.*) Ms. Zavala Leiva requested a stay of removal, which ICE granted, and she was then placed under an Order of Supervision on March 9, 2022, which required her to appear for periodic check-ins with ICE. (*Id.* ¶ 8, Doc. 1 ¶ 50.)

Also in March 2022,[1] Ms. Zavala Leiva and her family were the victims of a violent robbery. (Doc. 1-4 ¶ 9.) The charges against the assailant included aggravated assault, felony unlawful use of a weapon, and endangering the welfare of a minor child, all under Missouri law. (Doc. 1 ¶ 51.) The family reported the crime to the police and cooperated with all requests from the police department. (Doc. 1-4 ¶ 9.) Based on their victimization and their assistance with the investigation, the family applied for U visas, with Mr. Martinez Larin as the principal applicant. (*Id.* ¶ 10.)

On February 7, 2025, USCIS's Vermont Service Center granted a favorable BFD and deferred action to Ms. Zavala Leiva. (Doc. 1-1.) She was approved for work authorization at the same time. (Doc. 1-2.) Both her deferred action and work authorization stated that they were valid from February 7, 2025, until February 6, 2029. (Docs. 1-1, 1-2.)

---

[1] While Ms. Zavala Leiva states in her declaration that the robbery took place in March 2022, the complaint states that the crime occurred on December 20, 2021. (Doc. 1 ¶ 51.) For the purposes of this motion, the date on which the crime occurred does not matter.

On May 4, 2026, Ms. Zavala Leiva reported for an ICE check-in at the ICE office in Kansas City. (Doc. 1-4 ¶ 13.) Although Ms. Zavala Leiva's deferred action remained valid, ICE took her into custody without explanation except for a single piece of paper: a two-sentence memorandum stating that ICE had canceled her Form I-220A Order of Release on Recognizance "for the reasons stated in Form I-213, dated October 21, 2016."[2] (Doc. 1 ¶ 55; Doc. 1-3; Doc. 1-4 ¶¶ 16–19.) Over the next several days, ICE transferred Ms. Zavala Leiva to detention facilities in Kansas and Louisiana before ultimately removing her to El Salvador on May 15, 2026. (Doc. 1-4 ¶¶ 18–20.)

On August 18, 2026, citing Ms. Zavala Leiva's May 2026 deportation, USCIS's Nebraska Service Center issued a Revocation Notice revoking Ms. Zavala Leiva's work authorization and terminating the deferred action that the Vermont Service Cener had previously granted. (Doc. 24-1.) The Government represents that "as part of a workload realignment USCIS is currently undergoing, any further action that USCIS will take on [Ms. Zavala Leiva's] U-visa petition will occur in the Nebraska Service Center." (Doc. 17 at 2.) On October 8, 2026, USCIS's Nebraska Service Center issued a "Notice of Intent to Revoke" advising that it was rescinding the revocation and termination notice issued in August 2026 and that USCIS intended "to revoke the approval previously granted for the Form I-765, Application for Employment Authorization, filed by you on October 7, 2022." (Doc. 37-1 at 2.)

Ms. Zavala Leiva's family remains in the United States. They are facing a number of hardships because of Ms. Zavala Leiva's absence. (Doc. 1-4 ¶ 22.) Of particular note, Ms.

---

[2] The referenced October 2016 Form I-213 is not before the court. The Government has submitted a copy of a Form I-213 dated May 4, 2026, which indicates that officers notified Ms. Zavala Leiva that there was "an outstanding warrant for her arrest." (Doc. 17-1 at 2.) The Form I-213 referenced "current criminal charges" of May 4, 2026, under 8 U.S.C. § 1251. (*Id.*)

Zavala Leiva was the primary caregiver for her oldest daughter, Gabriela, who is deaf, has a speech delay, and has global developmental delay. (*Id.*) Without Ms. Zavala Leiva's care, Gabriela has been struggling both physically and emotionally. (*Id.* ¶ 23.) Ms. Zavala Leiva's husband and second oldest child are attempting to fill her shoes, but they cannot communicate as effectively with Gabriela as Ms. Zavala Leiva could. (*Id.* ¶¶ 23–24.) Through this lawsuit, she seeks to be united with them.

## Legal Standards

Ms. Zavala Leiva seeks a temporary restraining order under Fed. R. Civ. P. 65(b) and a preliminary injunction under Rule 65(a). "The standard for entry of a TRO is essentially the same as for a preliminary injunction." *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (citing *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)). "The main differences are, first, that a TRO is often granted *ex parte* but thereafter has a limited lifespan and, second, that even where . . . there is a subsequent adversarial hearing on the TRO, it typically occurs before there has been extensive discovery." *Id.* Here, although there has been no discovery, the relevant facts are derived primarily from administrative actions, the occurrence of which is not in dispute. Briefing on the request for Rule 65 relief is complete, and the court has heard argument from the parties at two separate hearings, giving both sides ample opportunity to present their positions. This case has proceeded beyond the earliest stages where a TRO might be appropriate; the court therefore focuses on the request for a preliminary injunction under Rule 65(a).

Rule 65(a) authorizes the court to "issue a preliminary injunction only on notice to the adverse party." As noted above, the Government has had ample notice of Ms. Zavala Leiva's request for preliminary relief. "A preliminary injunction is an equitable remedy and an act of

discretion by the court." *Top Ridge Invs., LLC v. Anichini, Inc.*, No. 16-cv-00076, 2016 WL 8809223, at *2 (D. Vt. June 15, 2016); (quoting *Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015)); *see also, e.g.*, *Cabrera Martinez v. Marich*, 816 F. Supp. 3d 356, 362 (W.D.N.Y. 2025) (noting district court's "wide discretion in determining whether to grant a preliminary injunction" (quoting *Valenzuela Arias v. Decker*, 612 F. Supp. 3d 307, 311 (S.D.N.Y. 2020))). At the same time, courts recognize that "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

The standard for analyzing a request for a preliminary injunction is well established:

> In general, a plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of a preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest.

*Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024) (cleaned up). Although each factor is important, "[t]he showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (cleaned up).

## Analysis

Ms. Zavala Leiva raises claims under the Administrative Procedure Act ("APA"), the Due Process Clause of the Fifth Amendment, and the Mandamus Act, arguing that her removal was unlawful under each. The Government argues that the requests for a TRO and for a preliminary injunction should be denied. (Doc. 17 at 2.)

Before proceeding to the enumerated preliminary-injunction factors, the court notes the Government's assertion that the preliminary-injunction standard in this case is "heightened"

because Ms. Zavala Leiva is seeking a mandatory injunction—i.e., an injunction that alters the status quo. (Doc. 19 at 11.) Ms. Zavala Leiva asserts that the requested injunction would not alter the status quo, which she defines as the time when she was "living in Kansas City with an unrevoked bona fide determination, employment authorization, and deferred action." (Doc. 24 at 15.) The court need not resolve this dispute because the court's conclusion is the same under either the ordinary or the "heightened" standard.

The Government articulated another preliminary concern at the October 9 hearing: that proceeding to a ruling on the request for a preliminary injunction deprives the Government of an opportunity to test the veracity of Ms. Zavala Leiva's allegations and creates a risk that others might abuse the Rule 65 process. But as stated above, the Government has had ample opportunity to present its position at this preliminary stage. The Government has not identified any material factual dispute, and the court finds it proper to proceed to the preliminary injunction analysis based on the papers. *Cf. Davis v. N.Y.C. Hous. Auth.*, 166 F.3d 432, 437–38 (2d Cir. 1999) ("[M]otions for preliminary injunction should not be resolved on the basis of affidavits that evince disputed issues of fact."). If plaintiffs in other cases abuse the Rule 65 process, the court anticipates that the Government can use its significant powers to identify and prosecute such abuses.

## I. Irreparable Harm

"The irreparable harm requirement is the single most important prerequisite for the issuance of a preliminary injunction. This requirement must therefore be satisfied before the other requirements for an injunction can be considered." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 80 (2d Cir. 2024) (internal quotation marks and citations omitted). "[I]rreparable harm exists where, but for the grant of equitable relief, there is

a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Id.* (internal quotations marks and citation omitted).

"[P]rolonged family separation amounts to irreparable injury." *Sunny v. Biden*, 573 F. Supp. 3d 759, 772 (E.D.N.Y. 2021) (collecting cases); *see also Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir. 2001) (en banc); *Juarez v. Noem*, No. 26-cv-00801, 2026 WL 799976, at *8 (E.D. Cal. Mar. 23, 2026). This may be especially true when a parent and child are separated. *D.J.C.V. v. U.S. Immigr. & Customs Enf't*, No. 18 Civ. 9115, 2018 WL 10436675, at *1 (S.D.N.Y. Oct. 15, 2018) ("Except in the most dreadful circumstances, a court should not countenance the cruelty of the separation of a parent and child by the government.").

Here, Ms. Zavala Leiva was separated from her husband and three children for about 100 days between the time that ICE detained her in May 2026 and the time that USCIS's Nebraska office issued the Revocation Notice in August 2026. That separation has likely already caused irreparable harm, and certainly continued separation will do so.[3]

## II. Likelihood of Success on the Merits

Ms. Zavala Leiva argues that ICE removed her despite lacking the statutory or regulatory authority to do so and in violation of her right to due process. For the reasons below, the court

[3] Ms. Zavala Leiva also argues that, "[b]ecause [she] alleges the deprivation of a constitutional right, no separate showing of irreparable harm is required." (Doc. 10-1 at 11.) The Second Circuit recently stated that, while it has often "presumed irreparable harm for alleged deprivations of certain constitutional rights . . . the Supreme Court has never applied this presumption outside of the First Amendment context." *Nat'l Ass'n for Gun Rights v. Lamont*, 153 F.4th 213, 248 (2d Cir. 2025). "And even in that context, [the Second Circuit] has not axiomatically applied the presumption that plaintiffs alleging deprivations of First Amendment rights have satisfied the requirement of irreparable harm." *Id.* Because Ms. Zavala Leiva has demonstrated other irreparable harm, the court need not address whether the alleged deprivation of her due process rights amounts to irreparable harm in this case.

finds that she is likely to succeed on the first argument—that is, she is likely to succeed on the merits of her claim that ICE removed her in violation of U.S. immigration laws.

Ms. Zavala Leiva contends that ICE had no authority to either revoke her deferred action or to remove her while her deferred action remained valid. Her argument amounts to a challenge under the APA for agency action "not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," and "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D). The Government maintains that ICE had discretion to cancel the Order of Release on Recognizance and that deferred action granted Ms. Zavala Leiva only "lower priority" for removal, not absolute protection from removal. (Doc. 19 at 12.)[4]

As Plaintiff points out, she is not arguing that her BFD granted "total" protection from removal. (Doc. 24 at 4.) Instead, she asserts that ICE lacked authority to cancel the BFD that USCIS had granted. (*Id.* at 2.) The court agrees. USCIS's Policy Manual clearly indicates that it is USCIS (not ICE) that has the authority to revoke a grant of deferred action. USCIS Policy Manual, Vol. 3, Part B, ch. 6 ("USCIS may terminate the grant of deferred action and revoke the BFD [employment authorization] at any time if it determines the favorable exercise of discretion or BFD [employment authorization] are no longer warranted . . . .").[5] The court in *Alfaro v.*

---

[4] The Government also states that "ICE currently has the resources to pursue lower priority cases for removal." (*Id.*) That appears to be accurate, if not an understatement. *See* Secure America Act, Pub. L. No. 119-98, §§ 102, 202, 140 Stat. 837 (appropriating more than $38 billion for ICE for fiscal year 2026).

[5] Plaintiff cites 8 C.F.R. § 214.14(d)(3) for the proposition that USCIS alone has authority to terminate a grant of deferred action. (Doc. 24 at 3.) That regulation supports the proposition insofar as the deferred action is granted in connection with placement on the waiting list specified at § 214.14(d)(2). *See* 8 C.F.R. § 214.14(d)(3) ("[A] petitioner may be removed from the waiting list, and the deferred action or parole may be terminated at the discretion of USCIS."). The waiting list is not the same interim benefit as a BFD, but the court views the

*Mullin* reached the same conclusion regarding authority to revoke deferred action based on approval for Special Immigrant Juvenile Status. 831 F. Supp. 3d 177, 184 (E.D.N.Y. 2026). And, although this case does not involve Deferred Action for Childhood Arrivals ("DACA"), 8 C.F.R. § 236.23 specifically states that it is *USCIS* that may terminate a grant of deferred action under that program. 8 C.F.R. § 236.23(d)(1)–(2). By contrast, the parties have not presented—and the court has not found—any evidence that *ICE* has authority to terminate a noncitizen's deferred action.[6] Ms. Zavala Leiva is therefore likely to succeed on this point.

As for the effect of deferred action, the idea that an "unrevoked grant of deferred action prevents . . . removal . . . is consistent with the Supreme Court's description of deferred action in *AADC*." *Nevarez Jurado v. Freden*, 813 F. Supp. 3d 376, 389 (W.D.N.Y. 2025). As noted above, the Supreme Court stated in that case that "[a]pproval of deferred action status means that . . . no action will thereafter be taken to proceed against an apparently deportable [noncitizen], even on grounds normally regarded as aggravated." *AADC* 525 U.S. at 484 (internal quotation marks and citation omitted). The Supreme Court has similarly referred to deferred action as "forbearance of removal." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 1 (2020). The USCIS Policy Manual provides a similar definition, saying that "[d]eferred action is the formal documenting of a decision to exercise prosecutorial discretion to not pursue removal action or deportation against a[] [noncitizen] for a certain period of time." USCIS Policy Manual, Vol. 1,

---

regulation as supporting—or at least consistent with—Plaintiff's position as to the locus of authority for terminating deferred action granted to BFD recipients.

[6] The Government cites 8 C.F.R. § 241.4(*l*) as supporting its argument that ICE had discretion to cancel the Order of Release on Recognizance. (Doc. 19 at 12.) That might be so, but as the Government itself concedes, the Order of Release on Recognizance is "separate[]" from USCIS's 2025 grant of a BFD and deferred action. (*Id.* at 13.) The court has located no authority for the proposition that ICE's cancellation of the prior Order of Release could nullify or otherwise affect USCIS's grant of deferred action.

Part I, ch. 2, https://www.uscis.gov/policy-manual/volume-1-part-i-chapter-2 [https://perma.cc/6Q26-2Z7W]. Based on this authority, other courts have found that ICE cannot remove—or detain—a noncitizen with a valid grant of deferred action. *See Nevarez Jurado*, 813 F. Supp. 3d at 389; *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 912–13 (W.D. Wash. 2025) (collecting cases); *Alfaro*, 831 F. Supp. 3d at 184; *Garcia Lanza v. Noem*, 822 F. Supp. 3d 326, 333–34 (collecting cases).

On May 20, 2026—a few days after Ms. Zavala Leiva's detention and removal—Judge André Birotte Jr. issued his decision in *Immigration Center for Women & Children v. Noem* ("*ICWC*"), 351 F.R.D. 324 (C.D. Cal. 2026). The plaintiffs in that case challenged ICE's January 2025 policy decision (the "2025 Guidance") that "expressly repealed previous policy and dramatically changed ICE's enforcement posture towards individuals with pending petitions for victim-based immigration benefits from a policy of refraining from immigration enforcement against such persons in deference to their pending applications, to a policy of enforcement despite their pending applications." *Id.* at 348. The plaintiffs claimed, among other things, that the 2025 Guidance improperly "permits ICE to disregard USCIS grants of deferred action." *Id.* at 361. The *ICWC* court concluded that preliminary class certification was appropriate and that the plaintiffs were entitled to a preliminary injunction, reasoning, in part, that the 2025 Guidance "reflects a decision to subject persons with deferred action to immigration enforcement, directly contrary to caselaw holding that deferred action protects a person from immigration enforcement action." *Id.* at 386 (citing *AADC*, 525 U.S. at 484). The *ICWC* court stayed the 2025 Guidance, and further stayed "the De Facto Revocation Policy, under which ICE does not honor grants of deferred action conferred by USCIS to individuals with pending petitions for U or T visas." *Id.* at 397.

The Government defendants appealed the *ICWC* court's decision in June 2026; that appeal is pending in the Ninth Circuit. No. 26-3961 (9th Cir. filed June 19, 2026). Then, as noted above, the Government defendants in Ms. Zavala Leiva's case took the following additional steps. On August 18, 2026, citing Ms. Zavala Leiva's May 2026 deportation, USCIS's Nebraska Service Center issued a Revocation Notice revoking Ms. Zavala Leiva's work authorization and terminating the deferred action that the Vermont Service Cener had previously granted. (Doc. 24-1.) On October 8, 2026, the Nebraska Service Center issued a "Notice of Intent to Revoke" advising that it was rescinding the revocation and termination notice issued in August 2026 and that USCIS intended "to revoke the approval previously granted for the Form I-765, Application for Employment Authorization, filed by you on October 7, 2022." (Doc. 37-1 at 2.) The October 2026 notice is consistent with the Government's position in this case that USCIS has discretion to revoke a BFD "at any time" and that, even if there was some infirmity in the August 2026 Revocation Notice, USCIS could simply revoke the deferred action again. (Doc. 19 at 14–15.)

Whatever discretion USCIS enjoys for revoking a BFD, and whatever notice or process is required for doing so, there is no dispute that USCIS had not revoked Ms. Zavala Leiva's BFD at the time that she was detained and deported in May 2026. Although those agency actions did not violate the stay imposed in *ICWC*—the court decision was not issued until some days after Ms. Zavala Leiva was deported—the *ICWC* ruling supports the conclusion that Ms. Zavala Leiva is likely to succeed on the merits. It appears that ICE's conduct in this case was in furtherance of the decision in the 2025 Guidance "to subject persons with deferred action to immigration enforcement, directly contrary to caselaw holding that deferred action protects a person from immigration enforcement action." *ICWC*, 351 F.R.D. at 386.

In short, USCIS had not revoked Ms. Zavala Leiva's deferred action at the time ICE arrested her or at any time before she was deported, ICE had no authority to revoke it, and ICE had no authority to remove her while her deferred action remained valid. Ms. Zavala Leiva is therefore likely to succeed on the merits of her claim that ICE removed her in violation of U.S. immigration laws.

The court therefore turns to the likelihood of obtaining the requested relief. *See Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 233 (S.D.N.Y. 2016) ("[D]emonstrating likelihood of success on the merits requires more than a mere possibility of *relief*." (emphasis added; internal quotation marks omitted)); *Beldock v. Deutsche-Eco USA Corp.*, No. 16-cv-14, 2016 WL 8809221, at *5 (D. Vt. Feb. 22, 2016) ("In assessing the likelihood of success on the merits, the court considers the likelihood that the plaintiff will ultimately obtain the same relief at the end of the case."); *Miami Gold Productions, Inc. v. Gannett Co.*, 593 F. Supp. 672, 674 (S.D.N.Y. 1984) ("The likelihood of success refers not to the likelihood of establishing a cause of action but to the likelihood of obtaining injunctive relief.").

Here, the requested permanent relief is very similar to the requested interim relief. In the complaint, Ms. Zavala Leiva seeks a declaration that her removal in May 2015 was unlawful and that her deferred action remains in effect; she also seeks a writ of mandamus ordering the Government to honor the grant of deferred action. (Doc. 1 at 18.) She further seeks an order requiring the Government to facilitate her return to the United States, and an injunction prohibiting Defendants from removing or detaining her "while she is on BFD status." (*Id.* at 19; *see also* Doc. 36 (supplemental petition dated October 6, 2026, seeking similar relief).) The proposed preliminary relief seeks a similar injunction "for so long as her deferred action remains unrevoked." (Doc. 10-5 at 2.)

USCIS's October 2026 "Notice of Intent to Revoke" indicates that USCIS intends to revoke Ms. Zavala Leiva's deferred action and employment authorization, stating that a final decision will be issued after November 10, 2026. (Doc. 37-1.) Because the requested injunction would only be in place as long as Ms. Zavala Leiva's deferred action remains unrevoked, the practical effect of the injunction may be limited, particularly if she is unable to persuade the agency not to revoke and if she is unsuccessful in any appeal.[7] The court nevertheless concludes that Ms. Zavala Leiva is likely to succeed at least on her request for a declaratory judgment that her removal in May 2026 was unlawful. In the meantime, for the reasons stated below, the balance of equities and the public interest favor granting the requested preliminary injunction.

## III. Balance of the Equities and the Public Interest

In analyzing the last two injunction factors, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," as well as "the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. "To establish that the balance of hardships tips in their favor, the plaintiffs must demonstrate that the harm they would suffer absent the relief sought is substantially greater than the harm the defendants would suffer if the injunction were granted." *New York v. U.S. Dep't of Educ.*, 477 F. Supp. 3d at 305. The last two factors merge when the Government is a party in the case. *Saget v. Trump*, 375 F. Supp. 3d 280, 339–40 (S.D.N.Y. 2019).

---

[7] In her supplemental petition dated October 6, 2026, Ms. Zavala Leiva has added a request for a declaration that the deferred action and employment authorization granted to her in February 2025 "remain in force through February 6, 2029." (Doc. 36 at 31.) That requested relief would require court interference in USCIS's ongoing proceedings as described in the October 2026 "Notice of Intent to Revoke." The court is not persuaded that Ms. Zavala Leiva is likely to obtain that particular aspect of the requested relief, but this issue can be addressed at a later stage of this case.

Here, the injury to Ms. Zavala Leiva is severe. She is separated from her family and the place that has been her home since 2016. She lost her job and her right to work and live in the United States. Of course, the court recognizes the Government's legitimate interest in swiftly executing removal orders. But it was also the Government that granted Ms. Zavala Leiva deferred action. That grant post-dated Ms. Zavala Leiva's removal order, and USCIS nevertheless judged that she should be able to remain in the United States while her U visa application was still pending. Based on the record as developed thus far in this case, there were no changed circumstances to justify changing that conclusion. The Government's interest in removing Ms. Zavala Leiva is also lessened in this case because she may yet be granted a U visa—her removal does not render her ineligible. That grant would allow her to return to and live in the United States and to eventually seek legal permanent resident status.

In this case, Ms. Zavala Leiva's "'extremely high likelihood of success on the merits is a strong indicator that a preliminary injunction would serve the public interest' because '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" *New York v. Admin. for Child. & Families*, 833 F. Supp. 3d 361, 403 (S.D.N.Y. 2026) (alterations in original; quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (holding that the Government "cannot suffer harm from an injunction that merely ends an unlawful practice").

The Government has offered scant commentary on the effect of USCIS's post hoc August and October 2026 actions to revoke or announce an intent to revoke the BFD that was in force in May 2026. Presumably the Government's position is that those more recent events tip the balance of equities against preliminary relief because USCIS has arguably sought to ratify ICE's enforcement actions after the fact. Ms. Zavala Leiva maintains that the October 2026 notice

"sharpens the need for interim relief" because, "[a]bsent an order preserving Petitioner's status pending conclusion of these proceedings, USCIS has stated it may extinguish that status on or after November 10, 2026, before the Court reaches the merits." (Doc. 37 at 4.)

In light of the *ICWC* court's order, it does not appear that an injunction in this case is necessary to put an end to ICE's apparently unlawful practice of taking enforcement action against BFD holders. That broader issue is being litigated elsewhere. At the same time, Ms. Zavala Leiva's separation from her family is a severe injury and the court concludes that preliminary and limited injunctive relief is appropriate and necessary. It is also consistent with USCIS's October 2026 notice, which rescinds the prior revocation and appears to recognize that Ms. Zavala Leiva *currently* has deferred action because USCIS "intends" to revoke it.

Of course, USCIS's October 2026 notice suggests that Ms. Zavala Leiva faces a steep incline with that agency going forward. But the preliminary relief that the court orders here recognizes the severity of the harm and gives her an opportunity to present her case with the agency and before this court with the status and with the family support that she enjoyed before ICE's alleged unlawful conduct. As discussed below, the appropriate preliminary remedy minimizes any hardship to the Government.

## IV. Remedy

"Once the legal requirements for an injunction are met, this Court may exercise its equity jurisdiction to mold a decree to the necessities of the case." *Lichtenberg v. Besicorp Grp. Inc.*, 43 F. Supp. 2d 376, 384 (S.D.N.Y. 1999) (citing *Weinberger v. Romero-Barcelo*, 45 U.S. 305, 312 (1982)). "Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Romero-Barcelo*, 456 U.S. at 313 (internal quotation marks and citation omitted).

In this case, the APA allows the court to "hold unlawful and set aside agency action" found to be unlawful. 5 U.S.C. § 706(2). To "set aside" means "cancel, annul, or revoke." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 829 (Kavanaugh, J., concurring) (quoting Black's Law Dictionary 1612 (3d ed. 1933)).

In this case, cancelling, annulling, or revoking the allegedly unlawful action requires the Government to undo its removal of Ms. Zavala Leiva. It is within the court's power to order that relief, as the Supreme Court has affirmed. *Abrego Garcia*, 604 U.S. ---- , 145 S. Ct. 1017, 1018 (2025). The court does not require the Government to fund Ms. Zavala Leiva's return from El Salvador, but, as in *ICWC*, will preliminarily ENJOIN Defendants from preventing her re-entry to the United States "in the same immigration status she had prior to her detention and removal." *ICWC*, 351 F.R.D. at 397.

**Conclusion**

Plaintiff's Motion for a Preliminary Injunction (Doc. 10) is GRANTED as follows. Defendants are preliminarily ENJOINED from preventing Ms. Zavala Leiva's re-entry to the United States in the same immigration status she had on May 4, 2026, prior to her detention and removal. Defendants shall treat Plaintiff's deferred action and employment authorization, granted through the bona fide determination process on February 7, 2025, as valid and in full force and effect. Defendants are preliminarily ENJOINED from taking any action to remove Ms. Zavala Leiva from the United States, or to detain her for removal, based on the removal order entered in her immigration proceedings, for so long as her deferred action remains unrevoked.

Defendants shall file a written status report confirming compliance with this Order within seven days and shall promptly report any material developments concerning Ms. Zavala Leiva's return to the country. No security is required under Fed. R. Civ. P. 65(c). This Order shall

remain in effect pending further order of the court. Insofar as it seeks a TRO, the Motion is MOOT; and insofar as it seeks preliminary relief other than the relief ordered here, the Motion is DENIED.

Dated at Burlington, in the District of Vermont, this 15th day of October, 2026.

Geoffrey W. Crawford, Judge
United States District Court